CITY OF COLUMBUS, APPELLEE, *v.* AMARINE, APPELLANT.

(No. 7517—Decided June 30, 1964.)

*Mr. John C. Young*, city attorney, *Mr. Howard P. Lowe* and *Mr. Gordon L. Sroute*, for appellee.
*Mr. L. P. Henderson*, for appellant.

BRYANT, J.  Larry Ernest Amarine, defendant in the court below, has appealed to this court on questions of law from the judgment of the Columbus Municipal Court finding him guilty of reckless operation of a motor vehicle, imposing a fine of $50 and costs and sentencing him to five days in the Columbus Workhouse.  The charge against Amarine was contained in an affidavit in which the city of Columbus, appellee herein, was plaintiff in the court below.  It alleged that Amarine violated Section 2133.03 of the Codes of the City of Columbus entitled "Reckless Driving."

Section 2133.03, *supra*, is substantially identical with the provision of the state traffic code found in Section 4511.20 of the Revised Code. The possible penalty under the city ordinance, however, upon conviction, if a first offender, is a fine of not more than $500 and imprisonment for not more than 90 days, or both, which is much more severe than under the state law which, for a first offense, provides a fine not to exceed $50 and no imprisonment.

The affidavit in this case, omitting the heading, signature and oath, reads as follows:

"R. Freshcorn being first duly cautioned and sworn, deposeth and saith that one Larry Ernest Amarine on or about the 11 day of Aug. A.D., 1963, in the city of Columbus, county of Franklin, and state of Ohio, did then and there unlawfully operate a certain motor vehicle without due regard for the safety and rights of pedestrians, drivers and occupants of other vehicles, and in such a manner as to endanger the life, limb or property of persons lawfully using the public roads or highways, to wit, by operating a DeSoto on W. Rich Street as follows: Reckless operation traveling at high rate of speed contrary to ordinance of said city * * *."

Amarine entered a plea of not guilty and was tried before a judge of the court below sitting as judge and jury. The charge against Amarine was founded upon Section 2133.03, *supra*, reading as follows:

"No person shall operate a vehicle or trackless trolley without due regard for the safety and rights of pedestrians and drivers and occupants of all other vehicles and trackless trolleys, and so as to endanger the life, limb or property of any person while in the lawful use of the streets."

Most of the language in the affidavit consists of a statement corresponding to the provisions of the city ordinance forbidding reckless operation. The principal and perhaps the only operative facts applicable to this case are that the offense occurred on August 11, 1963; that Amarine operated a "DeSoto" somewhere on West Rich Street; and that the reckless operation consisted of "traveling at high rate of speed."

In support of the prosecution's case, the city presented one witness only, namely, police officer R. Freshcorn. It appears that Amarine was operating the DeSoto automobile on West

Rich Street in the city of Columbus, Ohio; that four other persons were in the car at the time; that the car was traveling from west to east; that Davis Avenue intersects West Rich Street; that vehicles traveling on Davis Avenue are required by stop signs to stop before entering West Rich Street; that as Amarine came upon the intersection of West Rich Street and Davis Avenue, another car traveling on Davis Avenue entered West Rich Street without stopping, contrary to the stop signs there; that Amarine was compelled to swerve his automobile to avoid hitting the other car; and that he did so and missed the other car by swinging his automobile to the right or south and struck a manhole located in the curb on the south side of West Rich Street, breaking some part or parts of the axle near the right front wheel, such wheel leaving skid marks along the street until the car came to rest.

The time at which the accident occurred is not brought out but there was testimony that a report thereof to the police department resulted in an order being issued to officer Freshcorn at 6:25 p. m. on the day in question to proceed to the scene and investigate the accident. The record is silent as to how long it took officer Freshcorn to get there. It is, however, clear and not in dispute that he did not witness any part of the events leading up to the accident; that he at no time saw Amarine operating his automobile; that Amarine's car was standing at or near the curb with the right front wheel broken when first seen by officer Freshcorn; and that officer Freshcorn asked for but did not locate any eyewitnesses among the crowd of spectators who gathered around Amarine's car.

Officer Freshcorn observed skid marks which he concluded were made by Amarine's car. The record does not disclose whether they were made by tires on one wheel or more than one wheel. The officer testified that he measured the skid marks. It might be inferred that Davis Avenue was a very wide street. the officer testifying:

"There was approximately a hundred and ninety-eight feet of skid marks from the westside of Davis, on Rich, to the eastside."

Officer Freshcorn testified as to a conversation he had with the defendant, as follows:

"Q. Would you relate to the court the conversation that

you had with Mr. Amarine at the scene of the accident? A. I ask Mr. Amarine what had happen and he stated that there was a car northbound on Davis that had failed to stop at the stop sign. He hit his brakes and tried to avoid contact with this other car by going in this direction (indicating)."

The direct testimony of the prosecution's only witness begins at page four and concludes at page nine and is completely devoid of any evidence from which an inference of reckless driving might be drawn other than the testimony as to the measurement of the skid marks already referred to.

On cross-examination, officer Freshcorn testified that he did not see Amarine driving the car at all, and when asked as to the alleged speeding, he said he founded his conclusion upon the skid marks and by the alleged admissions made by Amarine. The prosecution's witness testified that Amarine "was speeding by his own admission," and made further reference to Amarine's alleged admission "that he was speeding."

The trial court finally asked the prosecution's witness what Amarine had admitted and the officer testified:

"Mr. Amarine said that he was going no more than 35 miles an hour."

On redirect examination, the following testimony was elicited by the prosecution:

"Q. Officer, what is the prima facie speed limit posted in that area? A. Twenty-five."

It apparently was assumed by the court below that the prima facie lawful speed limit was 25 miles per hour at this intersection for vehicles moving on West Rich Street.

If the sole violation of Amarine was claimed to be speed greater than was reasonable and proper under the circumstances, the charge more appropriately could have been founded on Section 2133.04 of the Codes of the City of Columbus, which section is substantially identical with the provision of the state traffic code found in Section 4511.21 of the Revised Code. However, the affidavit filed in this case does not meet the minimum requirements of the speed limitation section, either of the city ordinance or the state traffic code, for the reason that affidavits under the speed limitation section are required to specify the time, place and speed at which the defendant is alleged to have traveled and also the speed which the

ordinance or law makes prima facie lawful at the place where the violation occurred.

The fact is that this affidavit is insufficient to charge an offense under Section 2133.04, *supra*, and the evidence is insufficient to sustain a conviction under Section 2133.03, *supra*.

We observe that the police officer concluded that a skid mark of the length he described indicated an unlawful speed, but he either was unwilling or unable to state what that speed was nor to explain any measuring stick by which he interpreted the length of skid marks into miles per hour.

As to the admission allegedly made by Amarine and related by the police officer, "that he was going no more than 35 miles an hour," in our opinion, it is also insufficient. Any figure less than "35 miles per hour" is obviously not in excess of 35 miles per hour.

In this case, the defendant has assigned a number of errors, but we conclude that principal reliance is placed upon the weight and sufficiency of the evidence and we, therefore, find that each of the five errors assigned is well taken and must be sustained. The judgment and conviction of the court below and the fine and sentence imposed are hereby reversed, set aside and held for naught, and the charge against defendant is hereby dismissed with the costs assessed against the plaintiff.

*Judgment reversed.*

DUFFEY and TROOP, JJ., concur.